UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

LANISHA LATRICE TAYLOR (4),

Defendant.

NO.: 26-CR-23 (DSD/SGE)

**MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT MISCONDUCT AND FOR AN EVIDENTIARY HEARING**

Lanisha Taylor moves this Court to dismiss the indictment in this case because the Government engaged in outrageous conduct in violation of the Due Process clause of the Fifth Amendment. The defense of outrageous government conduct focuses on the Government's actions. *See United States v. Cannon,* 88 F.3d 1495, 1506 (8th Cir.1996). Outrageous Government conduct occurs "[w]here the government essentially generates a new crime for the purpose of prosecuting it or induces a defendant to become involved for the first time in certain criminal activity, as opposed to merely interposing itself in an ongoing criminal enterprise. *United States v. Mosley*, 965 F.2d 906, 911 (10th Cir. 1992) (citing cases); *see also United States v. Boone,* 437 F.3d 829, 842 (8th Cir. 2006); *United States v. Pardue,* 983 F.2d 835, 841 (8th Cir.1993); *United States v. Huff,* 959 F.2d 731, 734 (8th Cir.1992); *United States v. Mazzella,* 768 F.2d 235, 238 (8th Cir.1985).

When a defendant raises "specific facts that are sufficient to raise a significant doubt about the propriety of the government's actions," this Court should hold an evidentiary hearing to develop the facts relevant to the defendant's defense of outrageous government

1

misconduct. *See United States v. Valona*, 834 F.2d 1334, 1340 (7th Cir. 1987) (cited in *United States v. Kelley*, 152 F.3d 881, 885 (8th Cir. 1998).

The events of this case take place on January 14, 2026. Hours prior to the events in this case, Deportation Officers with Immigration and Customs Enforcement (ICE) were conducting Enforcement and Removal Operations (ERO) operations in North Minneapolis, Minnesota. ECF 1 at 1, 26-mj-23 (PAM/DLM), "Aljorna Complaint". The ERO seemed to consist of driving in an unmarked vehicle, running publicly visible license plates and then making arrests. On this evening, officers ran the license plate of a Ford Focus. Aljorna Complaint, at 1-2. Officers allege that the registered owner of that Ford Focus (Joffre Stalin Paucar Barrera, who was 5'2" tall, weighed 128 pounds and was 35 years old) was illegally in the United States. *Id*. at 2.  But the driver of the vehicle (Alfredo Aljorna, who was 5'7", weighed 172 pounds, and 26 years old) was not the registered owner.  *Id*. Officers nonetheless activated their emergency lights and siren, and attempted pull the vehicle over. *Id*. Aljorna fled. Officers first lost track of the vehicle, then located it near the 600-block of North 24th Avenue, after it slid on ice and struck a light pole. *Id.* at 3. Aljorna exited the car, and ran inside of his residence, an apartment building. *Id.* at 3-4.

The next sequence of "facts" sworn to in this complaint have been determined to be lies[1]. *See*, ECF 48, Gov't Mtn to Dismiss Complaint with Prejudice, ("Newly discovered evidence in this matter is materially inconsistent with allegations in the Complaint Affidavit."); and ECF 49, "Order Dismissing With Prejudice", signed by Senior Judge Paul

---

[1] https://www.startribune.com/federal-agents-lied-about-why-they-shot-a-venezuelan-man-in-minneapolis-their-story-quickly-fell-apart/601567060

A. Magnuson.

Officer 1 and 2 claim they were attacked by two to three Hispanic males, including Aljorna and his co-defendant, Sosa-Celis. Officer 1 detailed a rather harrowing tale wherein he defended himself against multiple individuals and realized he was "in fact alone [Officer 2 not present], in the dark, facing the males." He claimed that one male had a red-handled broom stick, another was armed with a snow shovel. He described fighting for "about three minutes", and feeling "exhausted, alone, on the ground, and in fear of his safety." Officer 1 recounted details about Aljorna breaking free from the fight, and having "an angry scowl on his face". He recalled that one of the males attempted to hit him in the face and head with the broom stick. *Id.* at 4-6. The Complaint even noted the officer had injuries "consistent with" the story he was telling. *Id.* Officer 1 went on to claim that "[w]hile blocking the strikes with his left hand, [he] struggled to draw his service pistol with his right hand and pointed it in the direction of his assailants." *Id.* The officer stated it was under these circumstances, in pure self-defense, that he fired his gun and struck Sosa-Celis in the leg with a bullet. For his part, Officer 2 corroborated much of Officer's 1 claims of the fight. *Id.*

But "none of it was true."[2] In fact, Todd Lyons, the Director of Immigration and Customs Enforcement (ICE), confirmed that those two immigration agents "made untruthful statements" under oath and that further investigation into the matter would

---

[2] https://www.startribune.com/federal-agents-lied-about-why-they-shot-a-venezuelan-man-in-minneapolis-their-story-quickly-fell-apart/601567060

occur. [3] But these admissions and recognitions on the part of the government did not come independently. They came only *after* hearings in this District, before Senior Judge Magnuson, where the reality of the lies could no longer be hidden. Despite the false claims made in that case, a recitation of Sosa-Celis shooting is included in the Complaint in the instant matter, as context for the charge in the (eventual) indictment. *Taylor Complaint*, ECF 1 at para 5-6. And the government is correct in that the government's outrageous conduct in that shooting, provides the context for the events in this matter.

The truth was that on January 14, 2026, Officer 1 fired through the door at the men. These agents then lied about the shooting, claiming that the assaultive officer was actually the victim, despite that video footage and witness observations contradicted that. Still, despite the unjustified shooting, despite the agents lies about these men and their claim of self-defense, the government only continued employing aggressive and dangerous tactics that evening.

Inside of the apartment, where they already shot a man, agents deployed tear gas where there were other people, including women and small children. Outside of the apartment, "multiple state and federal law enforcement agents and officers responded to the scene." *Id*. at 6.

---

[3] https://www.pbs.org/newshour/nation/feds-investigate-whether-ice-officers-lied-about-shooting-of-venezuelan-man-in-minneapolis#:~:text=Immigration%20and%20Customs%20Enforcement%20Director,a%20federal%20judge%20ordered%20all



*Citizens filming, not crossing the yellow tape*



*Agents approaching the crowd, shooting tear gas canisters at citizens*



*Tear gas cans shot into the crowd of citizens*



*Citizens running from the tear gas, flash bangs, and approaching agents*



*Agents approaching the crowd (not citizens approaching them)*



*Citizens continue to document*



*Tear gas begins to fill the area*



*Agents have now crossed the yellow line, and turned the corner to continue approaching citizens*

These aggressive tactics included shooting tear gas canisters and flash bangs indiscriminately. One such can exploded under a car where two parents were trying to get their six children (age 6-months to 11 years old) home after a basketball game. Agents threw a gas can that exploded under a car with a family in it. The mother recalls the "car go up in the air and slam back down" causing all air bags in the car to go off, and everything to go "blurry".[4] The 6-month-old was the last child out of the car due to issues with clearing the baby seat and when the mother checked the baby for injury, he was not breathing, and his eyes were closed.

One week after the January 7, 2026, shooting and killing of Renee Good, ICE again shot at, and struck, another individual. Again, agents lied about the circumstances giving rise to the shooting. Again, they approached the family and the community with continued escalated violence. This is outrageous government conduct. These are the "specific facts that are sufficient to raise a significant doubt about the propriety of the government's actions," and because of that, this Court should hold an evidentiary hearing to develop the facts relevant to the defendant's defense of outrageous government misconduct.

During Operation Metro Surge and the events of January 14, 2026, the government violated Fourth Amendment rights when it pursued a driver that looked nothing like the registered owner, and tried to arrest him. The government deprived multiple individuals of their Fifth Amendment rights when they sought to deprive individuals of "life and liberty" without due process of law (e.g., killing Renee Good; shooting into the Aljorna apartment

---

[4] https://www.cnn.com/2026/01/17/us/minneapolis-family-tear-gassed-ice

where multiple families lived).  And it deprived citizens of First Amendment rights by shooting flash grenades and tear gas canisters into a crowd of Minneapolis citizens.

It is true that "the level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." *United States v. Williams*, 720 F.3d 674, 686 (8th Cir. 2013). It is also true that "outrageous Government conduct requires dismissal of a charge 'only if it falls within the narrow band of the most intolerable government conduct." The conduct undertaken by the government in pursuing Operation Metro Surge, and specifically the conduct undertaken by the government on January 14, 2026 is the most intolerable government conduct; it shocks the conscience. It is this outrageous conduct that requires dismissal of the indictment in this case.

The government alleges that Ms. Taylor was part of a large group present to protest these aggressive government actions. As part of this protest, some individuals engaged in certain criminal activity, like disabling ICE vehicles in order to stop their unlawful conduct. The government does not claim that Ms. Taylor personally damaged those vehicles but instead allege that she took a $20 box of ammunition out of an already opened lockbox. Ms. Taylor has no prior felony convictions. She was on a path to become law enforcement herself. But she was present at the scene, called in a tip about the destruction of the vehicle, and has somehow now been charged with a federal felony.

The Court has before it sufficient information to dismiss the Indictment based on outrageous government conduct. In the alternative, Ms. Tayor seeks an evidentiary hearing to develop the facts relevant to this defense.

Dated: March 16, 2026.

Respectfully submitted,

s / Lisa M. Lopez
Lisa M. Lopez
Attorney No. 0395791
Attorney for Ms. Taylor
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415